**In re ESTATE OF Richard H. JENKINS, Deceased, Appellant,**

**v.**

**Thomas L. GUYTON, Appellee.**

Supreme Court of Tennessee, at Nashville.

Dec. 18, 1995.

Charles G. Cornelius, Cornelius & Collins, Nashville, for appellant.

Fred E. Cowden, Jr., Nashville, for appellee.

**OPINION**

DROWOTA, Justice.

The Estate of Richard Jenkins appeals from the lower courts' refusal to bar the claim of a creditor of the estate, Thomas Guyton, as untimely filed. The specific issue presented here is whether the executor's communication to Guyton's attorney that (1) Jenkins had died, and (2) that his will was being probated in Davidson County, constitutes the "actual notice" required under Tenn.Code Ann. § 30–2–307(a)(1) to limit the period for filing claims against the estate to six months, thus rendering the claim untimely. We hold that such communication does not constitute "actual notice," and therefore affirm the judgment of the Court of Appeals and the Probate Court of Davidson County, both of which held that the claim was filed in a timely fashion.

### FACTS AND PROCEDURAL HISTORY

On June 24, 1982, Thomas Guyton obtained a judgment in the amount of $63,926 against Richard Jenkins in a federal court in Alabama. In February 1992, Guyton, who had resided in Florida since 1983, filed an action

in Davidson County to domesticate the judgment. On September 15, 1992, an agreed order was entered awarding Guyton a judgment of $141,781 against Jenkins. The order provided for a stay of execution upon payment of $25,000 in September 1992 and $2,500 by the 26th of each month thereafter.

Jenkins died testate on September 25, 1992. On October 1, his will was offered for probate in the Davidson County Probate Court; and on the same day, Jeffrey Jenkins and attorney C. Bennett Harrison—who had represented Jenkins in the previous litigation with Guyton—qualified as co-executors for the estate. On October 2, letters of testamentary were issued by the probate court. Pursuant to Tenn.Code Ann. 30–2–306(a), the clerk of the probate court published a *Notice to Creditors* in the *Nashville Business Journal* on October 12 and again on October 19.

On October 21, 1992, Harrison sent, pursuant to the agreed order, a $2,500 check to Guyton's attorney, Paul Housch. Accompanying this check was a letter, which provided, in pertinent part: "this ... is to advise you that Mr. Jenkins passed away at the end of September and his estate is currently being probated in Davidson County."[1] Harrison sent the $2,500 checks to Housch in a timely fashion from November 1992 through March 1993, but took no action to notify Guyton other than the above-mentioned letter. The other co-executor, Jeffrey Jenkins, likewise took *no action to notify* Guyton.

When the April 1993 installment was not received by the 26th of that month, Housch called Harrison's office to inquire about the payment. On April 29, 1993, Harrison informed Housch that no further payments would be forthcoming because Guyton had failed to file a claim against Jenkins's estate within the six-month period provided for in Tenn.Code Ann. § 30–2–306(c) and 307(a). On May 3, 1993, the verified claim of Guyton was filed in the Davidson County Probate Court; and on May 25, 1993, the co-executors filed an exception to the claim, alleging

that it was not allowable because it was not filed within six months of the first publication of the *Notice to Creditors* in the *Nashville Business Journal.*

After a hearing on this issue, the probate court held that the claim was allowable. The estate appealed from this ruling, but the Court of Appeals affirmed the judgment. Because we have not yet addressed the issue of what type of notice to estate creditors is required under the applicable statutes, we granted the estate's application for permission to appeal pursuant to Tenn.R.App.P. 11.

### ANALYSIS

The notice required to be given to creditors of an estate is governed by Tenn.Code Ann. § 30–2–306 and 307. Prior to 1989, § 30–2–306 provided, in pertinent part:

(a) It shall be the duty of the clerk of the court in which an estate is being administered, within thirty (30) days after the issuance of letters testamentary or of administration, to give in the name of the personal representative of such estate public notice of his qualification as such by two (2) consecutive weekly notices published in some newspaper of the county in which the letters testamentary or of administration are granted, or, if no newspaper is published in such county, by written notices posted in three (3) public places in the county, one (1) of which shall be posted at the usual place for posting notices at the courthouse.

· · · · ·

(c) The notice shall be substantially in the following form:

NOTICE TO CREDITORS—Estate of ____ (name of deceased) Notice is hereby given that on the ____ day of ____, 19__ letters of testamentary ... in respect of the estate of ____ (name of deceased) were issued to the undersigned by the ____ court of ____ County, Tennessee. All persons, resident and nonresident, having claims, matured or unmatured,

---

1. This letter is the subject of much dispute between the parties. Housch, Guyton's attorney, denies that he ever received such a letter, whereas the estate goes to great lengths to illustrate that Housch did in fact receive the communica-

tion. However, because we conclude that this communication does not constitute the requisite notice, this factual dispute is immaterial for purposes of this appeal.

against his (or her) estate are required to file the same with the clerk of the above named court within six (6) months from the date of the first publication (or of the posting, as the case may be) of this ___ day of ___, 19___. . . .

Furthermore, at that time § 30–2–307(a) provided that:

Within six (6) months from the date of the notice to creditors, required by § 30–2–306, all persons, resident and nonresident, having claims against the estate of the decedent, . . . shall file them . . . with the clerk of the court in which the estate is being administered.

In 1988 the United States Supreme Court, in *Tulsa Professional Collection Services v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988), considered the constitutionality of an Oklahoma law that was quite similar to the above-quoted Tennessee statute. Specifically, the statute at issue in *Pope* provided that all claims against an estate were to be presented to the executor or executrix within two months of the publication of a notice of the commencement of probate proceedings. The petitioner argued that the "nonclaim" statute violated the Due Process Clause of the Fourteenth Amendment because it provided only notice by publication, rather than actual notice, to creditors with claims against the estate.

An eight-member majority of the Court agreed with the petitioner's argument. In its analysis, the majority first cited *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) for the general proposition that due process requires that state action affecting property must be accompanied by notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Pope*, 485 U.S. at 484, 108 S.Ct. at 1344 (quoting *Mullane*, 339 U.S. at 314, 70 S.Ct. at 657). The majority then discussed *Mennonite Board of Missions*

*v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), a case in which the Court, in the context of a challenge to a state law that afforded interested parties to a tax sale only publication notice, held that "actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable." *Pope*, 485 U.S. at 483–84, 108 S.Ct. at 1344 (quoting *Mennonite*, 462 U.S. at 800, 103 S.Ct. at 2712) (emphasis in *Mennonite*).

The *Pope* majority then applied the principles enunciated in *Mullane* and *Mennonite* to the controversy before it, weighing the estate creditor's interest in receiving meaningful notice with the State's countervailing interest in the expeditious administration of estates. It resolved the conflict in favor of the petitioner, holding that due process required that actual notice be given to creditors that were "known" to the personal representative of the estate or that were "reasonably ascertainable" by him or her. *Pope*, 485 U.S. at 490, 108 S.Ct. at 1347.

■ In response to *Pope*,[2] the Tennessee Legislature in 1989 amended the notice provisions of § 30–2–306 by inserting the following:

In addition, it shall be the duty of the personal representative to mail or deliver by other means a copy of the published or posted notice as described in subsection (c) to all creditors of the decedent of whom the personal representative has actual knowledge or who are reasonably ascertainable by the personal representative, at such creditors' last known addresses. Such notice shall not be required where a creditor has already filed a claim against the estate, has been paid or has issued a release of all claims against the estate.

Tenn.Pub.Acts 1989, ch. 395, § 2 (codified at Tenn.Code Ann. § 30–2–306(e)).

**2.** After *Pope* was decided, Senator Ronnie Greer requested that the Attorney General give an opinion as to the constitutionality of § 30–2–306 and 307. The Attorney General responded, in an opinion dated August 8, 1988, that § 30–2–306

was clearly unconstitutional under *Pope*, and that it needed to be amended. Opinion of Attorney General, No. 88–138. The legislature amended the law during its next session.

Moreover, in the same public act the Legislature amended the time period for filing claims contained in § 30–2–307(a). That statute now provides as follows:

(a)(1) All claims against the estate arising from a debt of the decedent shall be barred unless filed within the period prescribed in the notice published or posted in accordance with § 30–2–306(c). However:

(A) If a creditor receives actual notice less than sixty (60) days before the expiration of the period prescribed in § 30–2–306(c) or after the expiration of the period prescribed in § 30–2–306(c) and more than sixty (60) days before the date which is twelve (12) months from the date of the decedent's date of death, such creditor's claim shall be barred unless filed within sixty (60) days from the date of receipt of actual notice; or

(B) If a creditor receives actual notice less than sixty (60) days before the date which is twelve (12) months from the decedent's date of death or receives no notice, such creditor's claim shall be barred unless filed within twelve months from the decedent's date of death.

Returning to the case at hand, it is undisputed that the executors of Jenkins's estate did not comply with the dictates of § 30–2–306(e). Despite the fact that Harrison certainly had "actual knowledge" of Guyton's claim against Jenkins, neither he nor the co-executor, Jeffrey Jenkins, sent Guyton a copy of the published *Notice to Creditors* at his address in Florida. This failure to comply with § 30–2–306(e), maintains Guyton, automatically extended the period within which his claim could be filed to one year from Jenkins's date of death under § 30–2–307(a)(1). Because he had until September 25, 1993, to file his claim, Guyton argues, the May 3, 1993, filing was timely.

For its part, the estate of Jenkins's concedes that it did not send a copy of the published notice to Guyton. However, it argues that compliance with § 30–2–306(e) is not the controlling inquiry here. Instead, it contends that because the period in which claims can be filed is governed by § 30–2–307(a)(1), the resolution of this case depends upon whether Guyton received "actual no-tice" within the contemplation of that statute. The estate then argues that because it sent a letter to the attorney Housch, Guyton's agent, informing him that Jenkins had died and that his will was being probated in Davidson County, it provided "actual notice" to Guyton. The estate supports this assertion by contending that (1) "actual notice," under Tennessee law, means anything that serves to put a reasonably prudent person on inquiry as to the legal consequences of a particular set of facts; and (2) that Housch, as an attorney, is presumed to know the law and thus cannot be said to have not been put on inquiry by the letter.

We believe that the estate's preferred definition of "actual notice," however valid it may be in other areas of Tennessee law, is unduly restrictive in this context. In fact, we believe that our acceptance of the estate's argument would place the constitutionality of Tennessee's notice provisions, which have already been amended to cure federal due process deficiencies, once again at risk. First, by effectively establishing a different standard of "actual notice" for those well-versed in probate law, such as attorneys, and those not so well informed, the estate's definition runs afoul of the *Mennonite* Court's injunction that "actual notice" shall be made available to "*any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable." *Mennonite,* 462 U.S. at 800, 103 S.Ct. at 2712 (emphasis in original).

Moreover, and even more significantly, the estate's precise argument has been rejected by the United States Supreme Court in the context of bankruptcy, proceedings which, for notice purposes, were acknowledged by the *Pope* majority to be analogous to probate proceedings. In *City of New York v. New York, N.H. & H.R. Co.,* 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953), the City of New York challenged a bankruptcy court's refusal to allow it to file certain liens held against the debtor railroad, arguing that since it had not received actual notice, the court had no power to forfeit its liens. The debtor railroad argued, *inter alia,* that the City knew of the bankruptcy proceedings and thus was placed on notice that its liens needed to be filed. A unanimous Court, in an opinion

authored by Justice Black, tersely rejected the railroad's argument:

> Nor can the bar order against New York be sustained because of the city's knowledge that reorganization of the railroad was taking place in the court. The argument is that such knowledge puts a duty on creditors to inquire for themselves about possible court orders limiting the time for filing claims. But even creditors who have knowledge of a reorganization have a right to assume that the statutory 'reasonable notice' will be given them before their claims are forever barred. When the judge ordered notice by mail to be given the appearing creditors, New York City acted reasonably in waiting to receive the same treatment.
>
> The statutory command for notice embodies a basic principle of justice—that a reasonable opportunity to be heard must precede judicial denial of a party's claimed rights. New York City has not been accorded that kind of notice.

344 U.S. at 297, 73 S.Ct. at 301.

In summation, we reject the estate's argument and conclude that while the term "actual notice" in § 30–2–307(a)(1) may be something other than an exact copy of the published *Notice to Creditors* outlined in § 30–2–306(c), such notice must, at a minimum, include information regarding the commencement of probate proceedings and the time period within which claims must be filed with the probate court. Because the letter received by attorney Housch did not contain this information, and because Guyton's claim was filed within one year of the decedent's death,[3] the claim was therefore timely filed.

For the foregoing reasons, the judgment of the Court of Appeals and the Davidson County Probate Court is affirmed.

ANDERSON, C.J., and REID, BIRCH and WHITE, JJ., concur.

---

3. Tenn.Code Ann. § 30–2–307(a)(1)(B) provides for an absolute one year limit on the filing of claims against the estate, and this limitations period applies whether the creditor has received proper notice or no notice at all. Thus, Guyton's claim was required to be filed within a year of Jenkins's death.