IN THE COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

FILED

**March 24, 1999**

Cecil Crowson, Jr.
**Appellate Court Clerk**

IN THE MATTER OF:                    ) C/A NO. 03A01-9810-CH-00319
    THE ESTATE OF CALLIE T. KEY,   )
    DECEASED.                      )
                                   )
                                   )
HOWARD WALDEN RODDY,                  )
                                   )
        Plaintiff-Appellant,       )
                                   )
                                   )
                                   ) APPEAL AS OF RIGHT FROM THE
                                   ) HAMILTON COUNTY CHANCERY COURT
v.                                   )
                                   )
                                   )
                                   )
                                   )
                                   )
                                   )
                                   )
HAMILTON COUNTY NURSING HOME,         )
                                   ) HONORABLE HOWELL N. PEOPLES,
        Defendant-Appellee.        ) CHANCELLOR

For Appellant                        For Appellee

JOHN W. MCCLARTY                     ARTHUR C. GRISHAM, JR.
Chattanooga, Tennessee               Grisham, Knight & Hooper
                                   Chattanooga, Tennessee

O P I N I O N

REVERSED AND REMANDED                                    Susano, J.

This appeal requires us to decide whether a claim against an estate was timely filed. Howard Walden Roddy ("Roddy"), executor of the Estate of Callie T. Key ("the Estate"), appeals from an order of the trial court allowing the claim of Hamilton County Nursing Home ("the Nursing Home"). He raises one issue that presents the following question for our resolution: Is the Nursing Home's claim time-barred under the provisions of T.C.A. §§ 30-2-306 through 30-2-310 (Supp. 1998)?[1]

I. *Facts*

Mrs. Key died on November 29, 1996. Prior to her death, she had lived for a number of years at a facility owned by the Nursing Home. In fact, shortly before her death, she was transported from that facility to the hospital on an emergency basis.

Prior to qualifying as executor, Roddy went to the nursing facility and asked for Mrs. Key's final bill. He testified that the staff "rudely" ignored him. In any event, he left without securing a bill for services rendered to Mrs. Key.

---

[1] Some of the relevant statutes, T.C.A. §§ 30-2-306 through 30-2-310, have been amended on several recent occasions. In the instant case, the provisions, as amended, are applicable, with one exception: because of differences in the effective dates of the various amendments, the previous six-month period for filing claims applies, rather than the recently-enacted four-month provision. *Compare* T.C.A. § 30-2-306(c) (1984) *with* T.C.A. § 30-2-306(c) (Supp. 1998). In all other respects, however, the code provisions, as amended, are applicable. T.C.A. § 30-2-307 makes reference to "the period prescribed in § 30-2-306(c);" therefore, for ease of reference, we will refer to both T.C.A. §§ 30-2-306 and -307 as they are found in the supplement to the bound code volume. We do so, however, with the understanding that the applicable time frame is *six* months, as previously set forth at T.C.A. § 30-2-306(c)(1984).

Roddy qualified to administer Mrs. Key's estate on July 3, 1997, some seven months after her death. Notice of his qualification, as required by T.C.A. § 30-2-306(a) (Supp. 1998), was first published on July 11, 1997. Roddy concedes that he did not "mail or deliver" a copy of the "published notice" to the Nursing Home as contemplated by T.C.A. § 30-2-306(e) (Supp. 1998).[2]

On January 29, 1998, 13 months after Mrs. Key's death, an attorney acting on behalf of the Nursing Home called the office of the probate court in Hamilton County and learned that Roddy had qualified to administer Mrs. Key's estate. This was the Nursing Home's first knowledge of Roddy's qualification. On February 5, 1998, the Nursing Home filed its claim against the Estate.

Roddy contends that the Nursing Home's claim is time-barred because it was not filed within 12 months of Mrs. Key's death. The Nursing Home argues its claim was properly filed pursuant to the provisions of T.C.A. § 30-2-307(a)(1)(A).

---

[2]T.C.A. § 30-2-306(e) (Supp. 1998) provides as follows:

> In addition, it shall be the duty of the personal representative to mail or deliver by other means a copy of the published or posted notice as described in subsection (c) to all creditors of the decedent of whom the personal representative has actual knowledge or who are reasonably ascertainable by the personal representative, at such creditors' last known addresses. Such notice shall not be required where a creditor has already filed a claim against the estate, has been paid or has issued a release of all claims against the estate.

II. *Standard of Review*

This non-jury matter is before us for a *de novo* review on the record of the proceedings below. Rule 13(d), T.R.A.P. That record comes to us with a presumption of correctness -- a presumption that we must honor unless the evidence preponderates against the trial court's factual findings. *Id*. The trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *Campbell v. Florida Steel Corp*., 919 S.W.2d 26, 35 (Tenn. 1996). Therefore, we will examine the trial court's interpretation of the applicable statutes with no presumption as to the correctness of the trial court's judgment. *Browder v. Morris*, 975 S.W.2d 308, 311 (Tenn. 1998); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998); *Tibbals Flooring Co. v. Huddleston*, 891 S.W.2d 196, 198 (Tenn. 1994); *Comdata Network, Inc. v. State Dept. of Revenue*, 852 S.W.2d 223, 224 (Tenn. 1993).

We must effectuate the intent of the legislature by looking to the plain language of a statute. *Browder*, 975 S.W.2d at 311; *Tibbals Flooring Co.*, 891 S.W.2d at 198. This we must do "without unduly restricting or expanding a statute's coverage beyond its intended scope." *Id.* In addition, "we are to assume that the legislature used each word in the statute purposely, and that the use of these words conveys some intent and has a meaning and purpose." *Browder*, 975 S.W.2d at 311. If the language of a legislative enactment is clear, unambiguous, and within the "legislative competency," we must "obey it." *Carson Creek*

4

*Resorts v. Dept. of Revenue*, 865 S.W.2d 1, 2 (Tenn. 1993). It is not our prerogative to question the wisdom of a legislative enactment.

### III. *Trial Court's Judgment*

The trial court held that the Nursing Home received "actual notice" on January 29, 1998, when its representative called the probate court and learned, for the first time, that Mrs. Key's estate was being administered.[3] The trial court concluded as follows:

> Therefore, the [Nursing Home] had sixty days from January 29, 1998, to file its claim against the estate. The claim was filed February 5, 1998, thereby complying with the provisions of T.C.A. § 30-2-306.[4]

### IV. *Analysis*

#### A.

Our initial task is to determine whether the filing of the Nursing Home's claim was timely under the provisions of T.C.A. §§ 30-2-306 and -307 (Supp. 1998). Specifically, we must

---

[3]The Estate contends that the Nursing Home knew of Mrs. Key's death at the time of her demise and that this knowledge is tantamount to "actual notice" under T.C.A. § 30-2-307 (Supp. 1998). We disagree. Knowledge of a person's death, standing alone, does not constitute the concept of "actual notice" under T.C.A. § 30-2-307 (Supp. 1998). *See Estate of Jenkins v. Guyton*, 912 S.W.2d 134, 138 (Tenn. 1995)("...while the term 'actual notice' in § 30-2-307(a)(1) may be something other than an exact copy of the published *Notice to Creditors* outlined in § 30-2-306(c), such notice must, at a minimum, include information regarding the commencement of probate proceedings and the time period within which claims must be filed with the probate court.")(emphasis in original). In the instant case, neither party makes an issue as to whether the information received in the phone call to the probate court on January 29, 1998, is sufficient to satisfy the definition of "actual notice" in *Estate of Jenkins*.

[4]The trial court apparently meant to refer to T.C.A. § 30-2-307.

5

decide, on the facts of this case, whether the relevant statutory scheme countenances the filing of a claim some 14 months after the decedent's death and almost seven months after the first publication of notice of the executor's qualification.

The relevant chronology in this case is not disputed:

11/29/96   Date of Mrs. Key's death

07/11/97   Date of first publication of notice of qualification of personal representative of Mrs. Key's estate

09/30/97   60 days "before the date which is twelve (12) months from [Mrs. Key's] date of death"  *See* T.C.A. § 36-2-307(a)(1)(A) (Supp. 1998)

11/12/97   60 days "before the expiration of [six months from the date of first publication of notice of qualification of personal representative of Mrs. Key's estate]" *See* T.C.A. § 36-2-307(a)(1)(A) (Supp. 1998)

11/29/97   One-year anniversary of Mrs. Key's death

01/11/98   Six months from date of first publication of notice of qualification of personal representative of Mrs. Key's estate

01/29/98   Date on which the Nursing Home's attorney first learned of the opening of Mrs. Key's estate in probate court

02/05/98   Date on which the Nursing home filed claim in

6

                         probate court against
                         estate

        The trial court held that the Nursing Home's claim was
timely filed.  That holding was based upon the court's
interpretation of T.C.A. § 30-2-307 (Supp. 1998), which provides,
in pertinent part, as follows:

>       (a)(1) All claims against the estate arising
>       from a debt of the decedent shall be barred
>       unless filed within the period prescribed in
>       the notice published or posted in accordance
>       with § 30-2-306(c).  However:
>
>       (A) If a creditor receives actual notice less
>       than sixty (60) days before the expiration of
>       the period prescribed in § 30-2-306(c) or
>       after the expiration of the period prescribed
>       in § 30-2-306(c) and more than sixty (60)
>       days before the date which is twelve (12)
>       months from the decedent's date of death,
>       such creditor's claim shall be barred unless
>       filed within sixty (60) days from the date of
>       receipt of actual notice; or
>
>       (B) If a creditor receives actual notice less
>       than sixty (60) days before the date which is
>       twelve (12) months from the decedent's date
>       of death or receives no notice, such
>       creditor's claim shall be barred unless filed
>       within twelve (12) months from the decedent's
>       date of death.

Our reading of the statute leads us to a conclusion different
from that of the trial court.

        The introductory language of subsection (a)(1) of
T.C.A. § 30-2-307 (Supp. 1998) states the well-known general
rule:  "[a]ll claims against [an] estate arising from a debt of
the decedent shall be barred unless filed within [six months from
the date of the first publication of notice of the personal
representative's qualification]."  As can be seen from the above

7

chronology, the claim in this case was filed beyond the relevant six-month period; but this does not end our inquiry, because subsections (a)(1)(A) and (a)(1)(B) of T.C.A. § 30-2-307 (Supp. 1998) address other relevant time periods that impact the filing of claims in probate proceedings. We must decide if the Nursing Home's claim was properly filed under one of these other time periods.

Subsection (a)(1)(A) sets forth the rules applicable to claims filed by creditors who are entitled to receive and do receive the statutory "actual notice," *see* T.C.A. § 30-2-307 (Supp. 1998), as that term was interpreted by the Tennessee Supreme Court in the case of ***Estate of Jenkins v. Guyton***, 912 S.W.2d 134, 138 (Tenn. 1995).

The first predicate for a different time period for filing a claim is found in the following language of subsection (a)(1)(A) of the statute:

> If a creditor receives actual notice less than sixty (60) days before the expiration of [six months from the first notice of the personal representative's qualification]...and more than sixty (60) days before the date which is twelve (12) months from the decedent's date of death, such creditor's claim shall be barred unless filed within sixty (60) days from the date of receipt of actual notice;

Since the Nursing Home received actual notice *after*, rather than *before*, the expiration of six months from the first publication of notice, it is clear that this provision is not applicable to this case.

8

There is another exception in subsection (a)(1)(A):

> If a creditor receives actual notice...after
> the expiration of [six months from the first
> notice of the personal representative's
> qualification] and more than sixty (60) days
> before the date which is twelve (12) months
> from the decedent's date of death, such
> creditor's claim shall be barred unless filed
> within sixty (60) days from the date of
> receipt of actual notice;

The trial court relied upon this provision as legal authority for allowing the Nursing Home's claim. If the Nursing Home's claim fits within this provision, it is clear that its claim was timely filed. However, we find and hold that the trial court misinterpreted the statutory language at issue and that the subject claim does not fall within the subject language.

The trial court reached its conclusion based on a *part* -- but, significantly, not *all* -- of the language under discussion. The trial court concluded that the Nursing Home was chargeable with "actual notice" as of January 29, 1998, the date that the claimant's attorney called the probate court and learned of the probate of Mrs. Key's estate. Since the claim was filed within 60 days of the date of that telephone conversation, the trial court reasoned that the claim was timely filed; but the trial court, in reaching its conclusion, ignored the rest of the pertinent language -- "more than sixty (60) days before the date which is twelve (12) months from the decedent's date of death." T.C.A. § 30-2-307(a)(1)(A) (Supp. 1998). Since the provision of the statute under discussion is stated in the conjunctive, it is clear to us that the second exception only applies if the

9

relevant facts bring a claim within *both* parts of what is clearly a two-part test.  Because the creditor in this case did not receive actual notice of the opening of Mrs. Key's estate until *after* 12 months from the date of Mrs. Key's death, we conclude that the pertinent language simply does not fit the facts of this case.  Hence, the claimant cannot rely upon it to sustain its claim.

By the same token, it is clear that the claimant also cannot rely upon subsection (a)(1)(B) of the statute to validate its claim in this case.  Again, this is because the facts of this case do not fall within the language of that statutory provision.  T.C.A. § 30-2-307(a)(1)(B) (Supp. 1998) contemplates a situation in which a creditor receives actual notice less than 60 days before the date which is 12 months from the decedent's date of death, or receives no notice at all.  Here, the Nursing Home did receive actual notice, but only *after* 12 months from the date of Mrs. Key's death; therefore, subsection (a)(1)(B) of the statute is inapplicable to the instant case.

In summary, the Nursing Home cannot rely upon the provisions of T.C.A. § 30-2-307 (Supp. 1998) to validate its claim.  This being the case, we must look to T.C.A. § 30-2-310 (Supp. 1998), which provides as follows:

> All claims and demands not filed with the probate court clerk, as required by the provisions of §§ 30-2-306 -- 30-2-309, or, if later, in which suit shall not have been brought or revived before the end of twelve (12) months from the date of death of the decedent, shall be forever barred.

10

Because the Nursing Home's claim was not filed in compliance with any of the provisions of T.C.A. §§ 30-2-306 and -307 (Supp. 1998), and because the claim was not lodged with the probate court before the end of the 12-month period specified in T.C.A. § 30-2-310 (Supp. 1998), it is barred.

Our holding is consistent with the observation of the Tennessee Supreme Court in the case of *Estate of Jenkins v. Guyton*, 912 S.W.2d 134 (Tenn. 1995). In that case, the Supreme Court held that there was an absolute bar to claims not filed within one year of the date of the decedent's death:

> Tenn.Code Ann. § 30-2-307(a)(1)(B) provides for an absolute one year limit on the filing of claims against the estate, and this limitations period applies *whether the creditor has received proper notice or no notice at all.*

*Id*. at 138 n.3. (Emphasis added).

*B.*

The Nursing Home would argue that our interpretation of T.C.A. § 30-2-307 (Supp. 1998) runs afoul of the United States Supreme Court's decision in the case of *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988). We disagree.

In *Pope*, a hospital failed to file its claim within the time period specified in an Oklahoma probate statute. That

11

statute required claims to be filed within two months of the date of first *publication* to creditors. The claimant there contended that the statute did not provide proper notice to known creditors and, as such, violated a claimant's right to due process under the authority of **Mullane v. Central Hanover Bank & Trust Co**., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and **Mennonite Board of Missions v. Adams**, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). The Supreme Court agreed and held that "due process is directly implicated and actual notice [to known or reasonably ascertainable creditors] generally is required...[where a statute] becomes operative only after probate proceedings have been commenced in state court." **Pope**, 485 U.S. at 487; 108 S.Ct. at 1346.

Pope is of no help to the Nursing Home in the instant case. This is because **Pope** focuses on a statute that became "operative only after probate proceedings [had] been commenced in state court." **Id**., 485 U.S. at 487; 108 S.Ct. at 1346. **Pope** holds that "in such circumstances, due process is directly implicated and actual notice is generally required." **Id**. The Oklahoma statute at issue in **Pope** is quite similar to the one set forth at T.C.A. §§ 30-2-307(a)(1) (Supp. 1998) in that the time limitation in each of the statutes comes into play only after probate proceedings have been commenced. However, in the instant case, the real issue is whether the Nursing Home's claim is barred by a different statute of limitations -- the *self-executing one* set forth in T.C.A. §§ 30-2-307(a)(1)(B) and 30-2-310 (Supp. 1998). The holding in **Pope** clearly does not apply to

12

a self-executing statute of limitations such as the one found in these code sections.  This is clear from the following excerpt from *Pope*:

> The State's interest in a self-executing
> statute of limitations is in providing repose
> for potential defendants and in avoiding
> stale claims.  The State has no role to play
> beyond enactment of the limitations period.
> While this enactment obviously is state
> action, the State's limited involvement in
> the running of the time period generally
> falls short of constituting the type of state
> action required to implicate the protections
> of the Due Process Clause.

*Id*. 485 U.S. at 486-87; 108 S.Ct. at 1345-46.  The Nursing Home's claim is barred because it was not filed within 12 months of Mrs. Key's death.  Since it is barred by Tennessee's self-executing statute of limitations of 12 months -- which does not implicate the Due Process Clause of the Fourteenth Amendment -- we are not bound by the holding in *Pope*.

V.  *Conclusion*

In conclusion, we hold that the Nursing Home's claim against the Estate was not timely filed.[5]  Accordingly, we reverse the judgment of the trial court and remand this case for proceedings consistent with this opinion.  Costs on this appeal are taxed to the appellee.

---

[5]Our holding in this case does not address how, if at all, the self-executing statute of limitations would apply in a situation where an estate was first opened more than 12 months after a decedent's death.  Resolution of this issue must await another day.

                                    _____
                                    Charles D. Susano, Jr., J.


CONCUR:


_____
Houston M. Goddard, P.J.


_____
Herschel P. Franks, J.